UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DEAN BLECHMAN,

                    Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                           09-CV-2617 (JS)(ARL)

        – against –

IDEAL HEALTH, INC., TODD STANWOOD,
SCOTT STANWOOD, LOUIS DECAPRIO,
INFOBROKER, INC., UIX, LLC, and
UNITED INFOXCHANGE, LLC,

                    Defendants.
------------------------------------X
APPEARANCES:
For Plaintiff:        Erica Blythe Garay, Esq.
                    Meyer, Suozzi, English & Klein, P.C.
                    990 Stewart Avenue, Suite 300
                    Garden City, NY 11530

For Defendant:        Devindra Ramesh Tiwari Kissoon, Esq.
                    Cozen O'Connor
                    45 Broadway
                    New York, NY 10006

                    Michael Craig Schmidt, Esq.
                    Cozen O'Connor
                    909 Third Avenue
                    New York, NY 10022

SEYBERT, District Judge:

      Pending before the Court is a motion to transfer venue made by Defendants Ideal Health, Inc., Todd Stanwood, Scott Stanwood, Louis DeCaprio, Infobroker, Inc., UIX, LLC, and United InfoXchange, LLC (collectively, "Defendants").  For the reasons that follow, the Court GRANTS Defendants' motion.

<u>BACKGROUND</u>

      Defendant, Ideal Health, Inc. ("Ideal"), is organized under the laws of the State of Nevada and maintains its only office

in Byfield, Massachusetts.  Ideal is engaged in the business of direct marketing of health care products.  Louis DeCaprio, Scott Stanwood, and Todd Stanwood (collectively, "Individual Defendants") founded Ideal, and each presently owns twenty-three percent of the issued and outstanding shares of the company.  Although they are corporate officers and devote all of their professional efforts to its business operations, the Individual Defendants receive no direct compensation from Ideal.  However, two entities owned by the Individual Defendants--Infobroker, Inc. ("Infobroker") and UIX L.L.C.--provide management services to Ideal.  Ideal pays InfoBroker and UIX fees for these services, which benefits the Individual Defendants.

In March 2007, Ideal hired Plaintiff Dean Blechman ("Blechman") to serve as its Chief Executive Officer pursuant to the terms of a written Employment Agreement.  The Employment Agreement provided for Blechman to be paid a monthly salary of $15,000 and for Ideal to issue him a number of shares so that he would own ten percent of the then issued and outstanding shares of the Company.[1]  On or about May 24, 2001, the Individual Defendants and all of the then existing Ideal shareholders executed a Shareholders Agreement ("Shareholders Agreement").  The Shareholders Agreement provided that the Individual Defendants

---

[1] The Employment Agreement provided additional shares to Blechman, though the parties dispute how many shares and what percentage ownership Blechman would have.

would be entitled to exercise certain "Founders' Rights," including the right to remain on the Board of Directors and to approve specified extraordinary corporate actions such as a public offering of the Company's stock.    The Shareholders Agreement clearly provides that Plaintiff is a "Founder"[2] for all purposes.

In February, 2008, Blechman resigned, following a dispute with the Defendants over his performance.    Ideal and Blechman executed a Separation Agreement and General Release ("Severance Agreement") setting forth the terms upon which Blechman would resign.[3]  Defendants allege that following the separation, Blechman acted in such a manner so as to jeopardize Ideal's contract with Donald Trump ("Trump Transaction").    Accordingly, the Individual Defendants, along with Infobroker and UIX, commenced litigation in the United States District Court for the District of Massachusetts (the "Massachusetts Action") on May 14, 2009.  In the Massachusetts

_____

[2] The parties dispute the terms of the resignation. Blechman claims that he is entitled to remain as a member of the Board and receive an additional three percent equity interest in Ideal.  In addition, Plaintiff claims that, although the Shareholders Agreement provides that he, as a Founder, is an owner of UIX and Infobroker, he never received any distributions from those companies, and Defendants refused to provide him with financial information about the companies or any compensation they received therefrom.  Plaintiff also claims that Defendants failed to transfer the UIX and Infobroker shares to which he was entitled.  According to Plaintiff, these failures constitute breaches of the Shareholders Agreement.

[3] Of significance, the Severance Agreement also provided for the issuance of additional stock to Blechman, but again, the parties appear to dispute the conditions that needed to be fulfilled to trigger this issuance.

action, Ideal seeks a declaratory judgment that (1) Blechman is not entitled to the issuance of any additional stock, (2) there is no basis to Blechman's challenges to the Trump Transaction or the manner in which it was structured, and (3) Blechman does not have any right to remain on the Board.  DeCaprio, Todd and Scott Stanwood, Infobroker and UIX also seek a declaratory judgment that (4) the Amended Shareholders Agreement did transfer any rights in Infobroker and UIX to Blechman or, alternatively, (5) reforms the Amended Shareholders Agreement to reflect the true intent and understanding of the parties that Blechman does not have any interest, ownership or otherwise, in Infobroker and/or UIX. (DeCaprio Verification, Exhibit F.)

On May 20, 2009, Blechman commenced the instant action in the New York State Supreme Court, Suffolk County, against Ideal, the Individual Defendants, Infobroker and UIX.  Defendants removed the case on June 19, 2009.  Blechman seeks (1) a declaratory judgment stating that he has a right to the issuance of additional equity so that his ownership interest in Ideal, Infobroker, and UIX equals the individual holdings of the Individual Defendants. (Compl. ¶¶ 31-83); (2) the imposition of a constructive trust on any distributions made by Ideal, Infobroker, and UIX to the Individual Defendants from 2007 through the present; (3) recovery under a theory of unjust enrichment to recover his portion of those alleged distributions; (4) an accounting of any distributions

Infobroker or UIX made to the Individual Defendants and of any payments Ideal made to these companies; and (5) to inspect corporate records of Ideal, Infobroker, and UIX.

On June 26, 2009, Defendants filed their motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Alternatively, Defendants move to dismiss the First and Fourth through Seventh Causes of Action for failure to state a claim upon which relief can be granted.

<u>DISCUSSION</u>

I.   <u>Transfer Pursuant to 28 U.S.C. § 1404 and the First-Filed Rule</u>

Prior to reaching the merits of Defendants' motion to dismiss, the Court must address the threshold matter of whether this forum is the proper venue for hearing this dispute. <u>Adam v. Jacobs</u>, 950 F.2d 89, 92 (2d Cir.1991). Accordingly, the Court will consider whether, in light of 28 U.S.C. § 1404 and the first filed rule, this action is properly before it.

Section 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." <u>See</u> 28 U.S.C. § 1404(a). The goal of Section 1404(a) "is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (<u>quoting</u>

5

Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)) (internal quotation marks omitted).

Generally, to grant a transfer pursuant to 28 U.S.C. § 1404(a), the Court engages in a two-pronged inquiry. See Frasca v. Yaw, 787 F. Supp. 327, 330 (E.D.N.Y. 1992). First, the court asks whether the action sought to be transferred is one that "might have been brought" in the district court in which the movant seeks to have the case litigated. Frasca, 787 F. Supp. at 330; Kroll, 244 F. Supp. 2d at 102. "If the proposed venue is proper, the court then considers whether the transfer will serve the convenience of witnesses and parties and is in the interests of justice." Kroll, 244 F. Supp. 2d at 102. When analyzing the second prong, the court looks to several factors, including the (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances. See Neil Bros., 425 F. Supp. 2d at 327-28; see also Lighting World, Inc. v. Birchwood Lighting, Inc., No. 01-CV-4751, 2001 U.S. Dist. LEXIS 16981, at *10 (S.D.N.Y. Oct. 16, 2001). None

of these factors are singularly dispositive; rather, the Court weighs all the factors in making its determination. <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000); <u>see also</u> <u>Frasca</u>, 787 F. Supp. at 330. Moreover, the Court has broad discretion in determining whether transfer is warranted. <u>See</u> <u>Neil Bros.</u>, 425 F. Supp. 2d at 328; <u>Lighting World</u>, 2001 U.S. Dist. LEXIS 16981, at *10. As discussed below, the Court finds that the factors weigh in favor of granting the transfer.

Where more than one court has "'concurrent jurisdiction over an action involving the same parties and issues, courts will follow a first-filed rule, whereby the court which first has possession of the action decides it.'" <u>Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (<u>quoting</u> <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (citations omitted)). This rule is only applicable where the suits are duplicative. <u>Id.</u> (<u>citing</u> <u>Spotless Enters. Inc. v. The Accessory Corp.</u>, 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (citations omitted)). In other words, the actions must have substantial overlap with "identical or substantially similar parties and claims." <u>Id.</u>

Generally, there is a strong presumption in favor of the forum of the first-filed suit. <u>See</u> <u>New York v. Exxon Corp.</u>, 932 F.2d 1020, 1025 (2d Cir. 1991). Nevertheless, the rule is not

7

mechanically applied, because the proper forum should not be awarded as "a prize to the winner of a race to the courthouse." Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008). The suit which is first filed should have priority, absent a showing of a balance of convenience or special circumstances giving priority to the second suit. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006) (citation omitted); see 800-Flowers, Inc., 860 F. Supp. at 132; Ivy-Mar Co. v. Weber-Stephen Prods. Co., No. 93-CV-5973, 1993 WL 535166 at *1 (S.D.N.Y. Dec. 22, 1993). The plaintiff in the second action bears the burden of demonstrating any special circumstances justifying an exception to the rule. See Id.

Examples of special circumstances that warrant departure from the first-filed rule include situations where there is only a short span of time between the filing of the two actions, In re Arbitration Between Griffin Indus., Inc. v. Petrojam, Ltd., 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999), or where the interest of justice favors the second action. Spotless Enters., 415 F. Supp. 2d at 207. Courts weigh the same factors in balancing the competing interests for the purposes of assessing the applicability of the first-filed rule and deciding a motion to transfer venue; thus, a single analysis will resolve both issues. Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc., 474 F. Supp. 2d at 481 (citing Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505,

8

514 (S.D.N.Y. 2004) and <u>Spotless Enters.</u>, 415 F. Supp. 2d at 207).
In other words, "[t]he first-filed rule does not supersede the
inquiry into the balance of convenience under § 1404(a)[,]" <u>MK
Sys., Inc. v. Schmidt</u>, No. 04-CV-8106, 2005 WL 590665, at *3
(citation omitted), and when "the first-filed rule is invoked in
support of a motion to transfer, the court considers the rule as
one among several factors in the overall calculus of efficiency and
the interests of justice." <u>Am. Steamship Owners Mut. Prot. and
Indem. Ass'n, Inc.</u>, 474 F. Supp. 2d at 481 (<u>citing</u> <u>MK Sys</u>., 2005 WL
590665, at *6-7 (S.D.N.Y. Mar. 10, 2005) and <u>Micromuse, Inc. v.
Aprisma Mgmt Tech., Inc.</u>, No. 05-CV-0894, 2005 WL 1241924, at *4
(S.D.N.Y. 2005) (discussing prior related action pending in another
court under "judicial economy" factor)).  So, if "there are
countervailing factors, transfer may be denied even if the
existence of a pending related action in the proposed transferee
district would otherwise favor transfer." <u>Id.</u> at 482 (<u>citing</u>
<u>Micromuse</u>, 2005 WL 1241924, at *4-5 (declining to transfer even
though a different patent infringement action between the parties
was ongoing in the proposed transferee district and therefore the
factor "slightly favors transfer," because the other factors
weighed against transfer)).

II. <u>The First-Filed Rule and the Balance of Conveniences Warrant
    Transfer to the District of Massachusetts</u>

    A.   <u>First-Filed Rule</u>

         In this case, the first-filed rule favors transfer to the

9

District of Massachusetts, albeit to a minimal extent given the short span of time between the two filings: Defendants initiated proceedings in the District of Massachusetts on May 14, 2009, and Plaintiff filed on May 20, 2009.  Therefore, the bulk of the Court's determination depends upon the other factors: (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.  See id. at 480.

    B.    Balance of the Conveniences[4]

        The conveniences of the parties are clearly at odds in this case.  A New York-based litigation would be more convenient for Blechman, and, conversely, a Massachusetts-based litigation would be better for all Defendants.  As for the witnesses, Plaintiff provides some evidence that a handful of non-party witnesses, primarily attorneys who were engaged in drafting the

_____

[4] As stated earlier, the Court notes that Blechman bears the burden of overcoming the first-filed rule.  While Plaintiff provides evidence for his case-in-chief, he presents scant evidence on each of the factors.

various aforementioned agreements, are located in New York.  Of course, all of the other witnesses, including the Individual Defendants and other Ideal employees likely will be located in Massachusetts; but, the Court has no way of knowing their locations, because Plaintiff fails to provide this information. Similarly, Plaintiff provides no evidence regarding the relative means of the parties, or many of the other factors.  In terms of the other factors to be considered, Massachusetts appears to be the locus of operative facts,[5] and Massachusetts state law governs many, if not all of the agreements between the parties; thus, the District Court for the District of Massachusetts would be more familiar with the substantive law to be applied.

        Accordingly, in light of the Court's assessment of the totality of material circumstances, transfer of this case to the United States District Court for the District of Massachusetts is warranted.

<u>CONCLUSION</u>

        Although not all factors weigh in favor of a transfer, on balance, the totality of the circumstances weigh in favor of granting Defendants' motion.  For the foregoing reasons, the Court GRANTS Defendants' motion to transfer venue.  Thus, the Clerk of

---

        [5] Ideal, Blechman's previous employer, has its primary place of business in Massachusetts.  Blechman negotiated his employment in Massachusetts.  Although he appeared to tele-commute, Blechman clearly availed himself to Massachusetts law.

the Court is directed to terminate all pending motions and mark
this matter CLOSED.

                                   SO ORDERED


                                   /s/ JOANNA SEYBERT
                                   Joanna Seybert, U.S.D.J.

Dated:     November 2, 2009
           Central Islip, New York